| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 11 |
| GRASAN EQUIPMENT COMPANY, ) | |
| INC., ) | Case No. 21-bk-60199 |
| ) | |
| Debtor. ) | Judge Russ Kendig |
| ) | |

**MOTION FOR AN ORDER AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS TO TEREX USA, LLC OR TO THE HIGHEST AND BEST BIDDER, FREE AND CLEAR OF ALL LIENS, CLAIMS, AND INTERESTS**

Grasan Equipment Company, Inc. (the "Debtor"), through its undersigned counsel, files the following Motion for an Order Authorizing the Sale of Substantially All of Debtor's Assets to Terex USA, LLC or the Highest and Best Bidder, Free and Clear of All Liens, Claims, Encumbrances, and Interests (this "Sale Motion") averring as follows[1]:

## I.  Jurisdiction

1. The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue of this case is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are Sections 105, 363, and 506(c) of Title 11 of the United States Code 11 U.S.C. § 101 *et seq* (the "Bankruptcy Code"), Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Procedure for the United States Bankruptcy Court for the Northern District of Ohio (the "Local Rules").

---

[1] Capitalized terms not otherwise defined in this Sale Motion shall have the meanings given to them in the Bid Procedures Motion.

1

## II. Background

4. On February 19, 2021 (the "Petition Date"), Debtor filed a voluntary petition for relief under, Title 11, Chapter 11, Subchapter V, of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Ohio, Canton Division (the "Bankruptcy Court") at the above-captioned case number (the "Bankruptcy Case"). (Docket No. 1)

5. Debtor remains in possession of its assets and is managing its business as debtor-in-possession, pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

6. Debtor is a Corporation organized and existing under the laws of the state of Ohio with an address of 440 S. Illinois Avenue, Mansfield, Ohio, 44907.

7. Debtor is a second-generation family-owned business which (when it is operational) manufactures and repairs equipment for various segments of the oil and gas industry and other manufacturing industries.

8. Debtor owns all of the personal property used in connection with the operation of its business.

9. Debtor operated its business at the property located at 440 S. Illinois Avenue, Mansfield Ohio, 44907 (the "440 S. Illinois Avenue Property") which it leased from a non-debtor related entity, 440 S. Illinois Avenue Limited Partnership ("440 LP").

10. In recent years, the downturn in Debtor's industry coupled with the size of its business operations financially strained Debtor's liquidity and ability to continue operating profitably.

11. In addition, the global effects of the COVID-19 pandemic beginning in 2020 detrimentally impacted Debtor's business to such a level that, when combined with the historical financial issues, Debtor lacked the cash resources necessary to continue to operate.

12. Although Debtor attempted for a very long time to manage through its financial issues, on November 20, 2020, Debtor concluded it was no longer able to continue to incur debt and take in new work. Accordingly, on such date, Debtor ceased all operations, laid-off its employees and went dark (the "Shut-Down").

13. Subsequent to the Shut Down, Debtor, with the guidance and assistance of its professionals, marketed Debtor's business for sale, in conjunction with the marketing of 440 S. Illinois Avenue Property.

14. Prior to the Petition Date, Debtor accepted an offer to sell substantially all of its assets (the "Debtor's Assets") to Terex USA, LLC (the "Stalking Horse Bidder"). A complete list of Debtor's Assets is attached hereto as Exhibit A. To memorialize the deal, on February 19, 2021, the Stalking Horse Bidder executed an asset purchase agreement (the "Stalking Horse APA"). A true and correct copy of the Stalking Horse APA is attached hereto as Exhibit B. The Stalking Horse APA requires, among other things, Debtor to sell Debtor's Assets to the Stalking Horse Bidder, free and clear of all Liens (as that term is defined in the Stalking Horse APA) subject to Bankruptcy Court approval. (*See* Section 4.4(b) of the Stalking Horse APA).

15. The Stalking Horse Bidder, in a related transaction, made an offer to 440 LP to purchase the 440 S. Illinois Avenue Property (the "440 LP Sale"). To memorialize this agreement, on February 21, 2021, the Stalking Horse Bidder executed a Real Estate Purchase Agreement (the "Real Estate Agreement"). A true and correct copy of the Real Estate Agreement is attached hereto as Exhibit C.

16. As a condition precedent to 440 LP's obligation to close on the sale of the 440 S. Illinois Avenue Property, the Stalking Horse Bidder must have closed on the sale of Debtor's Assets under the Stalking Horse APA (Section 5.2 of the Real Estate Agreement).

17. In kind, Debtor's obligations to close under the Stalking Horse APA and to sell Debtor's Assets to the Stalking Horse Bidder are conditioned upon the Stalking Horse Bidder providing to Debtor certain deliverables set forth in Section 3.4 of the Stalking Horse APA (*see* Section 7.3(d) of the Stalking Horse APA). Section 3.4 of the Stalking Horse APA requires, among other things, that the Stalking Horse Bidder provide to Debtor "such documents, instruments, and consideration due from Purchaser or the applicable Purchaser Affiliate required to close the Real Estate Sale" (being the sale of the 440 S. Illinois Avenue Property under the Real Estate Purchase Agreement) (*see* Section 3.4(a) of the Stalking Horse APA). Debtor (as the "Seller" under the Stalking Horse APA) has the right to waive this condition (*see* Section 7.3 of the Stalking Horse APA).

18. The 440 LP Sale will allow Debtor's estate to realize significant benefit. 440 LP has agreed to pay portions of the purchase price realized from the sale of the 440 S. Illinois Avenue Property to pay creditors of Debtor under certain conditions. Specifically, to the extent that the purchase price being paid under the Stalking Horse APA does not increase (currently $200,000), 440 LP will pay (i) no less than $571,000 to the Internal Revenue Service; and (ii) the legal fees incurred by Debtor's counsel in this Bankruptcy Case, which will likely be no less than $100,000. If the amount realized from the sale of Debtor's Assets exceeds $200,000, 440 LP in its sole discretion may elect to lower the amount it will pay to the above referenced creditors, because such creditors could receive a larger recovery in the Bankruptcy Case.

19. In order to consummate the sale of Debtor's Assets, among other reasons, Debtor commenced this Chapter 11 bankruptcy case. As more fully set forth herein, in order to obtain Bankruptcy Court approval to sell Debtor's Assets to the Stalking Horse Bidder free and clear of Liens as required by the Stalking Horse APA, Debtor must subject the sale of Debtor's Assets to a

4

21-60199-rk    Doc 4    FILED 02/19/21    ENTERED 02/19/21 20:44:26    Page 4 of 12

process designed to ensure that a maximum price is achieved for Debtor's Assets. Debtor proposes to achieve this result through the auction process more fully detailed in this Sale Motion.

### III. Relief Requested

20. Pursuant to this Sale Motion, Debtor is requesting that the Bankruptcy Court authorize the sale of Debtor's Assets to the Stalking Horse Bidder pursuant to the Stalking Horse APA, free and clear of all liens, claims, encumbrances and other interests, pursuant to Sections 363(b), (f), and (m) of the Bankruptcy Code, with such liens, claims, rights, interests and encumbrances to be divested from Debtor's Assets and transferred to the sale proceeds realized from the sale of Debtor's Assets with the same validity, priority, extent and perfection as existed immediately prior to such sale.

### IV. Legal Requirements to Obtain Relief Requested

**A. Approval of the Sale of Debtor's Assets**

21. Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) provides in relevant part that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

22. A sale of a debtor's assets should be authorized pursuant to Section 363 of the Bankruptcy Code if a sound business purpose exists for doing so. *See, e.g.*, *Stephens Industries, Inc. v. McClung*, 789 F.2d 386, 389-390 (6th Cir. 1986) ("a court can authorize a sale of a debtor's assets when a sound business purpose dictates such action"); *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *In re Nicole Energy Services, Inc.*, 385

B.R. 201, 210 (Bankr. S.D. Ohio 2008); *In re Embrace Sys. Corp.* 178 B.R. 112, 124 (Bankr. W.D. Mich 1995); *In re North American Royalties, Inc.* 276 B.R. 860, 866 (Bankr. E.D. Tenn. 2002). The *McClung* court, following Second Circuit reasoning, noted a list of factors to consider when determining if there is a sound business purpose for a sale, including: the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-à-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value. 789 F.2d at 389 (internal citations omitted).

23. Furthermore, to demonstrate a sound business purpose warranting a sale, courts within the Sixth Circuit have developed a four-part test requiring a debtor to demonstrate: (1) a sound business reason; (2) accurate and reasonable notice; (3) an adequate price; and (4) good faith. *See In re Country Manor of Kenton, Inc.,* 172 B.R. 217, 220-221 (Bankr. N.D. Ohio 1994).

**B.** **The Requirements of Section 363(f) of the Bankruptcy Code for a Sale Free and Clear of Liens, Claims, and Interests**

24. Section 363(f) of the Bankruptcy Code states that:

> The trustee may sell Property under subsection (b) or (c) of this section free and clear of any interest in such Property of an entity other than the estate, only if –
>
> (1) applicable non-bankruptcy law permits sale of such Property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such Property is to be sold is greater than the aggregate value of all liens on such Property;
>
> (4) such interest is in a bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

**C.   Good Faith Under Section 363(m) of the Bankruptcy Code; Sale Not in Violation of Section 363(n) of the Bankruptcy Code**

25.   Finally, a sale of Debtor's Assets is being proposed by Debtor in good faith.

26.   Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of Property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such Property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). Section 363(n) of the Bankruptcy Code among other things provides that a trustee may avoid a sale under such section if the sale price was controlled by an agreement among potential bidders at the sale. While the Bankruptcy Code does not define "good faith," the Third Circuit in *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986) has held that:

> [t]he requirement that a Buyer act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a Buyer's good faith status at a judicial sale involves fraud, collusion between the Buyer and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

788 F.2d at 147 (citations omitted); *see also In re Coastal Industries, Inc.*, 63 B.R. 361, 369 (Bankr. N.D. Ohio 1986).

**V.   The Sale Proposed in this Sale Motion Complies with the Legal Standards of Section 363 of the Bankruptcy Code to Sell Debtor's Assets Generally and "Free and Clear" of all Interests.**

**A.   The proposed sale is proper under Section 363(b)(1) of the Bankruptcy Code**

27.   The proposed sale of Debtor's Assets pursuant to the Stalking Horse APA is proper under Section 363(b)(1) of the Bankruptcy Code, as the sale: is supported by a sound business

reason (Debtor is selling the assets of its business, as it can no longer operate its business and is selling such assets for a value it believes allows it to recognize a fair market return); and as more fully set forth herein is subject to higher and better offers; provides notice that is reasonable under the circumstances; is designed to maximize value and is being conducted in good faith.

28. In order to ensure that a maximum price is received for Debtor's Assets, Debtor will subject the sale contemplated under the Stalking Horse APA to an auction process.

29. Contemporaneously with this Sale Motion, Debtor has filed its *Motion for Entry of an Order Approving (I) Bidding Procedures for the Sale of Assets Free and Clear of Liens and Encumbrances; (II) Break-Up Fee Related to the Sale of Assets Free and Clear of Lien and Encumbrances; (III) Scheduling of an Auction of Debtor's Assets and a Hearing to Consider the Sale of Debtor's Assets; and (IV) Approving the Form and Manner of Notice* (the "Bid Procedures Motion"). (Docket No. 3).

30. Debtor anticipates that the sale of Debtor's Assets will either be to: (a) the Stalking Horse Bidder pursuant to the Stalking Horse APA; or (b) the highest and best bidder at an auction, if any, conducted by Debtor pursuant to the process set forth in the Bid Procedures Motion. The successful bidder, which may be the Stalking Horse Bidder, shall be referred to herein as the "Successful Bidder."

31. Subsequent to the Shut-Down, Debtor, with the guidance and assistance of its professionals, marketed Debtor's Assets, in conjunction and separate from the 440 S. Illinois Avenue Property. The offers received from the Stalking Horse Bidder for Debtor's Assets and 440 S. Illinois Avenue Property provided an offer that maximizes value for Debtor and Debtor's estate. However, after the anticipated approval of the Bid Procedures Motion (the "Bid Procedures Order"), Debtor, will conduct a post-petition marketing process to qualify additional buyers and sell Debtor's Assets (and to the extent it increases the value of Debtor's estate, the 440 S. Illinois

Avenue Property) for the highest and best offer received through a Court-approved process. Such marketing efforts shall include but is not limited to (a) dialog with existing interested potential buyers, and (b) advertisements in various regional and industry publications (both print and electronic media, including the Canton Repository, the Akron Beagle, the Columbus Dispatch, the Cleveland Plain Dealer and Crain's Cleveland Business).

32. The Stalking Horse Bidder has provided the basis for soliciting opening bids for a possible auction. In the event of an auction, Debtor intends to proceed as set forth in the Bid Procedures Order and will proceed to closing under the Successful Bidder's asset purchase (which may be the Stalking Horse APA).

33. Therefore, the sale of Debtor's Assets under the Stalking Horse APA may properly transfer the assets free and clear of any interest in Debtor's Assets pursuant to Section 363(b)(1) of the Bankruptcy Code.

**B.  Debtor's Assets may properly be sold under the sale proposed by this Sale Motion "free and clear" of all interests pursuant to Section 363 (f)(1) of the Bankruptcy Code**

34. Debtor has conducted a UCC-1 search to determine the purported lienholders of Debtor's Assets. The following pre-petition recorded claims, security interests, judgment liens and tax liens (without limitation) were identified and are set forth below (the "Lienholders").

| No. | Creditor | Collateral |
|---|---|---|
| 1 | Thryve Capital Funding, LLC | All Debtor's Assets |
| 2 | National Funding, Inc. | All Debtor's Assets |
| 3 | Internal Revenue Service | Federal Tax Lien on Debtor's Assets |
| 4 | Ohio Department of Taxation | State Tax Lien on Debtor's Assets |
| 5 | APZB Industries | All Debtor's Assets |
| 6 | CT Corporation System, as representative (2017) | All Debtor's Assets |
| 7 | CT Corporation System, as representative (2018) | All Debtor's Assets |

35. The listing of the Lienholders above does not constitute Debtor's agreement that such entity does in fact hold a valid allowable claim or interest. Debtor reserves the right to object or reduce the amount (if such claim is otherwise satisfied) to any claim or interest asserted against Debtor's Assets.

36. Debtor has been in contact with Lienholders with legitimate claims and believes that such Lienholders will either consent to the sale of Debtor's Assets as set forth herein or consent to have their claim be deemed satisfied. Debtor will serve the Lienholders with this Sale Motion, the Notice of Auction and Sale Hearing attached to the Bid Procedures and the Sale Order approving the relief requested by this Sale Motion.

37. Accordingly, Debtor may appropriately sell Debtor's Assets pursuant to Section 363(f) of the Bankruptcy Code.

**C.   The Sale of Debtor's Assets being proposed by this Sale Motion is being made in good faith pursuant to Section 363(m) of the Bankruptcy Code**

38. Debtor intends to make an appropriate showing at the Sale Hearing that the APA of the Successful Bidder was negotiated in an arm's-length transaction good faith and otherwise in accordance with the *Abbotts Dairies'* standards. The Stalking Horse Bidder is not an "insider" or an "affiliate" of Debtor, as those terms are defined in the Bankruptcy Code. If the Successful Bidder is an "insider" or "affiliate" of Debtor, Debtor shall disclose the identity of such party to the Bankruptcy Court at the Auction and Sale Hearing, along with the facts and circumstances surrounding the party's bids. Debtor will submit evidence that neither it, nor the Successful Bidder, engaged in any conduct that would prevent the application of Section 363(m) of the Bankruptcy Code or cause the application of, or implicate Section 363(n) of the Bankruptcy Code, with respect to the consummation of the Stalking Horse APA.

39. Accordingly, Debtor submits that the Bankruptcy Court should approve the sale of Debtor's Assets, pursuant to the terms of the Stalking Horse APA, subject to the highest and best bid under the Bid Procedures, and under Section 363(f) of the Bankruptcy Code, free and clear of all liens, claims, encumbrances, and interests, and any and all potential claimants should be compelled to look exclusively to the proceeds of the sale for satisfaction of its claims. All liens, claims, encumbrances, and other interests will be divested from Debtor's Assets sold and transferred to the proceeds of sale to the same extent and priority as they existed prior to the sale.

### VI. Notice

40. Notice of this Sale Motion has been provided to the following parties, or their counsel of record: (a) the Office of the United States Trustee; (b) the Subchapter V Trustee; (c) Debtor's shareholders; (d) the Lienholders; (e) all other known creditors and parties in interest, including but not limited to trade creditors and all other priority and general creditors, without limitation; (f) any party that has previously provided a written expression of interest or a letter of intent to either Debtor to acquire any of Debtor's Assets; and (g) all parties on the mailing matrix and all parties who have appeared in this and will automatically receive notice via the Bankruptcy Court's Docket system.

41. Debtor also seeks a waiver of any stay of effectiveness of the order approving this Sale Motion. Pursuant to Rule 6004(h) of the Bankruptcy Rules, "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the Bankruptcy Court orders otherwise." As set forth above, upon the entry of the Sale Order, the immediate sale of Debtor's Assets is essential to its success. Accordingly, Debtor submits that ample cause exists to justify a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies. Therefore, Debtor requests,

pursuant to Bankruptcy Rules 6004(h), that the Sale Order become effective immediately upon entry.

42. No prior request for the relief sought in this Sale Motion has been made to this or any other court.

### VII. Conclusion

WHEREFORE, Debtor requests that this Bankruptcy Court enter an order authorizing the sale of Debtor's Assets free, clear, and divested of the liens, claims, encumbrances, and other interests; that the liens, claims, encumbrances, and other interests be transferred to the proceeds of sale; that the stay of Section 6004(h) be waived; and granting such other and further relief as is just and proper.

Respectfully submitted,

LEECH TISHMAN FUSCALDO & LAMPL, LLC

Date: February 19, 2021  By: /s/ *Patrick W. Carothers*
Patrick W. Carothers (Ohio ID. No. 77164)
pcarothers@leechtishman.com
Matthew J. Burne (*Pro Hac Vice Pending*)
(PA ID No. 314888)
mburne@leechtishman.com
525 William Penn Place, 28th Floor
Pittsburgh, Pennsylvania 15219
Telephone: 412.261.1600
Facsimile: 412.227.5551

*Proposed Counsel to Debtor and Debtor-in-Possession*